# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                                              )
TUNICA-BILOXI TRIBE OF LOUISIANA )
 and RAMAH NAVAJO                             )
SCHOOL BOARD, INC.,                            )
                                                              )
            Plaintiffs,                                  )
                                                              )
    v.                                                     )        Civil Action No. 02-2413  (RBW)
                                                              )
UNITED STATES OF AMERICA, et al.,  )
                                                              )
            Defendants.                               )
_____)

## MEMORANDUM OPINION

The Tunica-Biloxi Tribe of Louisiana ("Tunica") and the Ramah Navajo School Board, Inc. ("Ramah Navajo"), the plaintiffs in this civil lawsuit, seek declaratory and injunctive relief along with monetary damages against the United States of America, Kathleen Sebelius in her official capacity as the Secretary of the Department of Health and Human Services, and Kenneth L. Salazar in his official capacity as the Secretary of the Department of the Interior,[1] under the Contract Disputes Act of 1978 (the "CDA"), 41 U.S.C. §§ 601–13 (2006), for alleged "massive violations" of the Indian Self-Determination and Education Assistance Act (the "ISDA"), 25 U.S.C. §§ 450–450n (2006), Second Amended Class Action Complaint (the "Compl.") ¶ 1. On September 22, 2008, the Court entered an order and accompanying memorandum opinion in which it granted in part and denied in part the defendants' renewed motion to dismiss in part the

---

[1] The plaintiffs' second amended complaint names Tommy G. Thompson and Gale A. Norton, at that time the Secretaries of the Department of Health and Human Services and the Department of the Interior, respectively, as defendants, prompting the Court to substitute Michael O. Leavitt and Dirk A. Kempthorne, the replacements for former Secretaries Thompson and Norton, as defendants in accordance with Federal Rule of Civil Procedure 25(d). Pursuant to that same rule, the Court substitutes Secretaries Sebelius and Salazar for former Secretaries Leavitt and Kempthorne as defendants in this case.

plaintiffs' second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and for summary judgment pursuant to Federal Rule of Civil Procedure 56, and denied in part the plaintiffs' renewed cross-motion for partial summary judgment pursuant to Rule 56.  Currently before the Court is the Defendants' Motion for Clarification of the Opinion and Order of September 22, 2008 (the "Defs.' Mot."), which the Court construes as a motion for partial reconsideration pursuant to Federal Rule of Civil Procedure 54, and the Plaintiffs' Motion for Leave to File [A] Second Supplemental Complaint pursuant to Federal Rule of Civil Procedure 15(d) (the "Pls.' Mot.").[2]  After carefully considering the parties' motions and the memoranda of law and exhibits filed in connection with those motions,[3] the Court concludes that it must deny both the defendants' motion for partial reconsideration and the plaintiffs' motion for leave to file a supplemental complaint for the reasons that follow.

The defendants' motion for partial reconsideration is easily resolved.  Their sole request is that the Court reconsider its dismissal of all claims for damages against Secretary Salazar insofar as that dismissal is "without prejudice."  Defs.' Mot. ¶¶ 4–9.  But the basis for the Court's dismissal of those claims was its lack of subject-matter jurisdiction over those claims, Tunica-Biloxi Tribe of La. v. United States, 577 F. Supp. 2d 382, 399–402 (D.D.C. 2008), and

---

[2]  On January 15, 2009, the Court issued an order directing the plaintiffs to show cause why the Court should not dismiss the Secretary of the Interior (at that time, former Secretary Kempthorne) from this case based upon the terms of a settlement agreement entered into in a collateral case before the United States District Court for the District of New Mexico captioned as Ramah Navajo Chapter v. Salazar, No. CIV 90-0957 LH/KBM ACE (D.N.M.).  The plaintiffs have not only filed a response to that order to show cause, but have also filed a motion seeking declaratory relief with respect to that same agreement and reinstatement of their prior motion for certification of a class under Federal Rule of Civil Procedure 23(b)(3), which the defendants have moved to stay.  The Court will resolve these matters at a later date.

[3]  In addition to the parties' motions, the Court considered the following documents in reaching its decision: (1) the Plaintiffs' Response to Defendants' Motion for Clarification of the Court's Opinion and Order of September 22, 2008, (2) the Reply in Support of Defendants' Motion for Clarification of the Court's Opinion and Order of September 22, 2008, (3) the Plaintiffs' Memorandum in Support of Motion for Leave to File Second Supplemental Complaint, (4) the Defendants' Opposition to Plaintiffs' Motion for Leave to File Second Supplemental Complaint (the "Defs.' Opp'n"), and (5) the Plaintiffs' Reply in Support of Motion for Leave to File Second Supplemental Complaint (the "Pls.' Reply").

"dismissals for lack of jurisdiction are not decisions on the merits and therefore have no res judicata effect on subsequent attempts to bring suit in a court of competent jurisdiction." Kasap v. Folger Nolan Fleming & Douglas, Inc., 166 F.3d 1243, 1248 (D.C. Cir. 1999). Thus, "where a court lacks subject[-]matter jurisdiction, it also lacks the power to dismiss with prejudice." Hernandez v. Conriv Realty Assocs., 182 F.3d 121, 123 (2d Cir. 1999). The defendants' motion is therefore without merit and must be denied as a consequence.

   The plaintiffs' motion for leave to file a second supplemental complaint is more complicated. Federal Rule of Civil Procedure 15(d) provides that the Court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." In this case, the plaintiffs seek leave to file a second supplemental complaint adding additional CDA claims that were denied (either actually or constructively) in 2007 and 2008 by the Indian Health Service (the "IHS"), the agency within the Department of Health and Human Services responsible for reviewing CDA claims submitted by tribes and tribal organizations in its capacity as the contracting officer for the self-determination contracts giving rise to those claims. Pls.' Mot. ¶¶ 1–4. The defendants oppose this motion on two grounds: (1) that the plaintiffs' request, if granted, would "unnecessarily delay the progress of this case," Defs.' Opp'n at 6, and (2) "on futility grounds," id. at 9.

   The defendants' first argument—that it would be unduly prejudicial to them to permit the filing of supplemental pleadings—is without merit. The Court has previously "hesitate[d] to address" the merits of the plaintiffs' remaining claims precisely because only "one asserted accounting irregularity" is identified in those claims and there are "many other asserted problems in that methodology" that, to this point, have been "outside the Court's purview." Tunica-Biloxi,

577 F. Supp. 2d at 426.  The Court thus declined to resolve the balance of the parties' cross-motions for summary judgment so that the plaintiffs would have "[an] opportunity to attempt to consolidate any other claims they desire to pursue in one forum and in one proceeding."  Id.

Subsequent events confirm the wisdom of this approach.  On March 12, 2009, Tunica initiated a second lawsuit in this Court out of concerns that its CDA claims for fiscal years 2001–05 might be time-barred otherwise.  See generally Tunica-Biloxi Tribe of La. v. United States, Civil Action No. 09-481 (RBW) (D.D.C.).  This second lawsuit threatens to fragment the plaintiffs' claims into separate proceedings notwithstanding the fact that the two proceedings will share two of the three parties in this case and, assuming Ramah Navajo was permitted to raise its supplemental claims in this case, will involve the same substantive issues as well.  This situation is manifestly inefficient, but the solution to this problem is to consolidate all of the plaintiffs' claims in one proceeding, not to force Ramah Navajo to initiate a third civil lawsuit regarding the exact same issues.

Nevertheless, the Court agrees with the defendants that the plaintiffs' motion must be denied because the claims raised by the plaintiffs in their proposed second supplemental complaint are futile.  "Motions to amend under [Federal Rule of Civil Procedure] 15(a) and motions to supplement under Rule 15(d) are subject to the same standard," Wildearth Guardians v. Kempthorne, 592 F. Supp. 2d 18, 23 (D.D.C. 2008), and motions to amend under Rule 15(a) may be denied where there is some "apparent or declared reason" for doing so, such as the "futility of [the] amendment," Foman v. Davis, 371 U.S. 178, 182 (1962); i.e., when "the proposed pleading would not survive a motion to dismiss," Nat'l Wrestling Coaches Ass'n v. Dep't of Educ., 366 F.3d 930, 945 (D.C. Cir. 2004).  Thus, "in deciding whether to grant or deny

4

a motion to supplement, the Court may consider the merits of the proposed new pleading." Burka v. Aetna Life Ins. Co., 945 F. Supp. 313, 317 (D.D.C. 1996).

The defendants assert that it would be futile for the plaintiffs to supplement their second amended complaint in the manner proposed by the plaintiffs because the claims raised in the plaintiffs' proposed second supplemental complaint were not properly presented to the IHS. Defs.' Opp'n at 9–14.  Specifically, the defendants argue that in its letter outlining its CDA claims, "Tunica [did] not break down each [of its] claim[s] by [the] amount claimed[,] nor [did] it provide any calculations to show how it derived [the total] amount [claimed]," id. at 11, and that Ramah Navajo, in addition to making these same errors, id. at 13, is attempting to bring its claims before this Court without first affording the IHS a reasonable amount of time to address them as required by 41 U.S.C. § 605(c), id. at 13–14.  The plaintiffs counter that "[e]ach plaintiff has submitted in writing to the contracting officer a clear and unequivocal statement of its claims[, e]ach claim was properly certified[, and] [e]ach presentment noted that the adverse adjustments complained of were reciprocally reinforcing and cumulative, compounding from year to year through the carry-forward process."  Pls.' Reply at 5.  They deem this level of specificity in the claims to be sufficient, noting that "[d]etailed mathematical calculations are not required for presentation."  Id. at 5–6.  Further, they assert that Ramah Navajo's claims should be "deemed denied" based on the "passage of time" since their submission to the IHS in June of 2007.  Id. at 5.

This Court has previously "described the exhaustion requirements of the CDA, which must be followed by the plaintiffs pursuant to 25 U.S.C. § 450m-1, as a jurisdictional prerequisite to the filing of a complaint under the CDA."  Tunica-Biloxi, 577 F. Supp. 2d at 407–08 (internal citation and quotation marks omitted).  The plaintiffs "do not suggest that this

5

determination was incorrect." Id. at 408.  Thus, the Court concludes once again that it should "adhere to its own law of the case regarding this matter and deem the plaintiffs' compliance with the exhaustion requirements of the CDA to be a jurisdictional prerequisite to the Court's consideration of those claims." Id.

The Court has also previously described in some detail the level of specificity required for a CDA claim to satisfy the presentment requirement of the CDA.  As the Court explained in the memorandum opinion accompanying its September 22, 2008 order:

> There is "no requirement in the [CDA] that a 'claim' must be submitted in any particular form or use any particular wording;" rather, "[a]ll that that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." Contract Cleaning Maint., Inc. v. United States, 811 F.2d 586, 592 (Fed. Cir. 1987).  The requirement that the contractor provide notice of the amount of the claim means only that "the amount claimed must be stated in a manner which allows for reasonable determination of the recovery available at the time the claim is presented and/or decided by the contracting officer." Metric Constr. Co. v. United States, 1 Cl. Ct. 383, 391 (1983).  Thus, the contractor need not actually spell out the amount of damages arising from its claim if "the amount of the claim would be easily determinable" through "simple arithmetic." Id. at 392.

Id. at 410.

Applying this standard to certain claims filed by Ramah Navajo for fiscal years 1999-2003, the Court found in its prior memorandum opinion that those claims had been properly presented to the IHS.  Id.  The Court observed that "Ramah Navajo delineate[d] three separate claims against the IHS for each fiscal year between 1999 and 2003" in a letter submitted to that agency on September 21, 2005, and attached to that letter "a three-page spreadsheet delineating the damages suffered by Ramah Navajo with respect to each of these claims for each of the fiscal years addressed in the letter." Id.  Thus, "[w]hile the spreadsheet [was] hardly a model of clarity,

6

it nevertheless provide[d] sufficient information for a reviewing agency like the IHS to calculate the amount of damages alleged for each claim through 'simple arithmetic.'" Id.

The claims described in the plaintiffs' proposed second amended complaint are a far cry from the detailed calculations set forth in Ramah Navajo's September 21, 2005 submission to the IHS.  As the defendants correctly state, Tunica outlines five different claims spanning five different fiscal years in a single letter to the IHS, but it fails to even designate the damages it allegedly incurred on a claim-by-claim basis, let alone explain how it arrived at those numbers. See Defs.' Opp'n, Ex. B (Letter from Earl J. Barbry, Sr., Chairman, Tunica-Biloxi Tribe of Louisiana, to Ralph W. Ketcher, Jr., Acting Senior Contracting Officer, Indian Health Service (Sept. 14, 2007)) at 4 (itemizing damages by year from 2001 to 2005, and explaining that these itemized figures reflect the tribe's "best estimates").  Ramah Navajo's claim is slightly more detailed: it has attached another spreadsheet to its letter to the IHS in which it segregates its claims based upon asserted errors in their calculation of one component (the "direct cost base") of the formula used to determine the amount of indirect cost funding for Ramah Navajo (the "Rate Dilution Claims") from claims based upon various alleged errors in the application of that methodology where there are shortfalls in the payments to or over-recoveries by Ramah Navajo (the "Carry-Forward Claims").  Id., Ex. A (Letter from Bennie Cohoe, Executive Director, Ramah Navajo School Board, Inc., to Veronica Zuni, Contracting Officer, Albuquerque Area Office, Indian Health Service (June 22, 2007)) at 5–7.  But Ramah Navajo does not separate its Carry-Forward Claims into claims based on alleged accounting irregularities regarding the carrying forward of shortfalls in tribal funding and claims based on alleged accounting irregularities regarding the carrying forward of overpayments to the plaintiffs, and it never explains how it arrives at the figures deployed throughout its spreadsheets.  See id. (listing only

7

the corrected carry forwards and direct cost base as calculated by Ramah Navajo for fiscal years 2004–06).

Notwithstanding these concerns, the Court might be inclined to conclude that the plaintiffs' description of their claims in the narratives of their respective letters to the IHS satisfy the notice requirement of the CDA if the IHS could translate the substance of the plaintiffs' claims into specific dollar amounts on its own.  After all, the plaintiffs need only state their claims "in a manner which allows for reasonable determination of the recovery available" to them, and the claims at issue here, being entirely methodological in nature, are uniquely reducible to specific figures through the use of "simple arithmetic."  Tunica-Biloxi, 577 F. Supp. 2d at 410 (internal citation and quotation marks omitted).  All the IHS would have to do is adjust its own carry-forward and direct cost base calculations to reflect the corrections demanded by the plaintiffs.

However, as is apparent from the IHS's letter to Tunica rejecting that plaintiffs' claims for fiscal years 2001–05, the IHS is not equipped to make the sort of calculations contemplated by the Court because that agency does not calculate the indirect cost rate used to determine the plaintiffs' indirect cost funding for a given fiscal year.  Rather, it is the National Business Center (the "NBC"), an agency within the Department of the Interior, that performs this calculation. See Defs.' Opp'n, Ex. C (Letter from Ralph W. Ketcher, Jr., Senior Contracting Officer, to Earl Barbry, Sr., Chairman, Tunica-Biloxi Tribe of Louisiana (Mar. 26, 2008)) at 6 ("Tunica has asserted that its contract with [the] IHS must be reformed because its indirect cost rate was improperly calculated by [the] NBC. . . . As the awarding agency, [the] IHS does not calculate [indirect cost] rates, but [it] will use them to calculate [indirect cost] funding if a tribal contractor has a current rate.").  Thus, by presenting their alleged damages in such a conclusory fashion, the

plaintiffs have presented the IHS with two equally untenable options: either accept the plaintiffs' representations with regards to damages on faith, or somehow reconstruct calculations that the agency did not perform and that are neither reproduced nor explained by the plaintiffs in their submissions to that agency.[4]

The Court therefore concludes that the plaintiffs have not properly presented the claims in their proposed second supplemental complaint to the IHS. The claims presented by the plaintiffs in their letters and attached documents to the IHS do not provide sufficient information for that agency to assess the amount of damages (if any) suffered by the plaintiffs. Consequently, the Court lacks subject-matter jurisdiction over those claims, and any supplemental pleading attempting to raise them would be futile. The plaintiffs' motion for leave to file a supplemental complaint must be denied.[5]

In light of this analysis, the Court will enter a separate order denying both the defendants' motion for partial reconsideration and the plaintiffs' motion for leave to file a supplemental complaint. Further, the Court will enter a separate order in Tunica's related lawsuit for it to show cause why the Court should not dismiss the amended complaint in that case for lack of

---

[4] One might argue that the IHS could have requested that the NBC—which, after all, is simply another arm of the same government—either provide the data necessary to make the calculations that would reduce the plaintiffs' claims to a monetary figure or run those calculations itself. But the CDA's exhaustion requirement demands a "clear and unequivocal statement" of the claim to "the contracting officer," and the contracting officer in this case was the IHS, not the NBC or the Department of the Interior. Contract Cleaning Maint., 811 F.2d at 592. Moreover, the plaintiffs could not have submitted their claims in good faith unless they had performed the mathematical calculations necessary to arrive at their claims for damages. Consequently, there is no excuse for the plaintiffs' failure to share those calculations with the IHS.

[5] On August 24, 2009, the defendants in Tunica's related case filed a motion to dismiss or for summary judgment, in support of which they argue, inter alia, that the Court lacks subject-matter jurisdiction over Tunica's claims because Tunica did not properly present its claims to the IHS as required by 25 U.S.C. § 450m-1—essentially, the same arguments advanced in support of the defendants' position that the plaintiffs' motion for leave to file a supplemental complaint in this case is moot. Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment at 14–17, Tunica-Biloxi Tribe of La. v. United States, Civil Action No. 09-481 (D.D.C. Aug. 24, 2009). The Court will therefore enter an order in that case granting the defendants' motion and dismissing Tunica's complaint for lack of subject-matter jurisdiction.

subject-matter jurisdiction as well.  The Court will also direct the parties to file a joint status report containing proposed dates for the filing of supplemental memoranda of law regarding the Carry-Forward Claims currently pending before the Court.  Finally, the Court will schedule a hearing to address the merits of the plaintiffs' response to the Court's order to show cause regarding Secretary Salazar, their related motion for declaratory relief and renewed motion for class certification, and the defendants' motion to stay the latter motion as soon as is practicable.

**SO ORDERED** this 27th day of August, 2009.[6]

REGGIE B. WALTON
United States District Judge

---

[6] An order will be issued contemporaneously with this memorandum opinion (1) denying the defendants' motion for partial reconsideration, (2) denying the plaintiffs' motion for leave to file a supplemental complaint, (3) directing the parties to file a joint status report within thirty days of the entry of this order, and (4) scheduling a hearing on the merits of the plaintiffs' response to the Court's order to show cause, their related motion for declaratory relief and renewed motion for class certification, and the defendants' motion to stay the plaintiffs' renewed motion for class certification.  The Court will also issue a separate order in the case styled Tunica-Biloxi Tribe of La. v. United States, Civil Action No. 09-481 (RBW) (D.D.C.), (1) granting the defendants' motion to dismiss or for summary judgment in that case, (2) dismissing Tunica's complaint in that case in its entirety for lack of subject-matter jurisdiction, and (3) closing that case.